IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

THETIS L. JOHNSON,

Petitioner,

v.

         Civil Case No. 14-cv-474-DRH
         Criminal Case No. 99-cr-30022-DRH-8

UNITED STATES OF AMERICA,

Respondent.

## MEMORANDUM & ORDER

HERNDON, District Judge:

  This matter is before the Court on petitioner Thetis L. Johnson's motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 (Doc. 1). The government filed a response in opposition of the motion (Doc. 7). For the following reasons, petitioner's motion for relief pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED**[1].

### I. Introduction and Background

  Petitioner Thetis L. Johnson was convicted of drug crimes in 1999. This Court sentenced Johnson to 168 months' imprisonment and 5 years' supervised

---

[1] Having examined the record, the Court concludes Johnson's claims do not warrant an evidentiary hearing. See *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) ("for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner [has] actual proof of the allegations going beyond mere unsupported assertions"); *Menzer v. United States*, 200 F.3d 1000, 1005 (7th Cir. 2000) (held that a hearing not required where the record conclusively demonstrates that defendant is not entitled to relief on § 2255 motion); see also Rules 4(b) and 8(a) of Rules Governing Section 2255 Proceedings).

release. In 2010, petitioner was released from prison and began serving his term of supervised release on June 21, 2010 (*USA v. Johnson et al.,* 99-cr-30022, Doc. 587). On September 26, 2011, after violating the original terms of his supervised release, Johnson agreed to a modification of the terms of his supervised release, to include radio frequency monitoring and home detention,

Johnson's violations, which led to the modification, included 1) failing to comply with drug testing, 2) failing to notify probation about law enforcement contact, 3) failing to submit monthly reports in a timely manner, 4) failing to respond truthfully to his probation officer's questions and statements, and 5) failing to make all required payments on his court imposed fine. (*USA v. Johnson et al.,* 99-cr-30022-8, Doc. 677).

Subsequent to those violation, Johnson was arrested for attempting to pass counterfeit bills at a Washington Park, Illinois Hustler Club that he received following a sale of marijuana (*USA v. Johnson et al.,* 99-cr-30022-8, Doc. 772). The counterfeit bill discovery was reported to police by the manager of the Hustler Club after they were discovered when Johnson attempted to make change. The manager believed the bills to be counterfeit, so police were called to the club to speak with the suspect, later identified as Johnson. Officer Allen Bonds, the officer on the scene, spoke with Johnson and notified him of the situation. Officer Bonds asked Johnson if he had any more counterfeit bills, in addition to those already confiscated. Johnson admitted that he did, at which time the men stepped outside the club to speak further and Johnson agreed to empty his pocket of a

large sum of bills placing them on the trunk of a nearby vehicle. (Doc. 783, p. 5-6). The incident led to Johnson's arrest .

Shortly thereafter, on April 18, 2013, the United States Probation Office for the Southern District of Illinois filed a petition seeking the revocation of Johnson's federal supervised release pursuant to 18 U.S.C. § 3583 for violations of his release terms, including those related to that June 8, 2012 arrest (Crim. Doc. 756). This Court revoked Johnson's supervised release and imposed 48 months additional imprisonment to be followed by 12 months of supervised release.

At the final revocation proceeding, petitioner denied allegations that he committed the offenses of distribution of marijuana and uttering counterfeit obligations or security, but admitted all other accusations (Id.). Ultimately the Court found Johnson committed the violations; Johnson had received the counterfeit money when he sold marijuana.

In addition to the 48 months of additional imprisonment to be followed by 12 months of supervised release, the Court included a search authorization as a special condition of supervised release. It is the search condition that Johnson appealed, and which the Seventh Circuit affirmed as a "reasonably necessary" condition under the facts of this case on October 23, 2013. *United States v. Johnson*, 542 Fed.Appx. 516 (7th Cir. 2013).

In his § 2255 petition, Johnson raises various claims of ineffective assistance of counsel pertaining to his revocation hearing (Doc. 1). The Court notes that the Federal Public Defender, Thomas C. Gabel represented Johnson over the course

of his revocation proceedings and subsequent appeal (Doc. 7-1). In his current petition, Johnson is specifically "seeking a new hearing and ask[s] this court to vacate sentence" on the basis of ineffective assistance of counsel (Doc. 1).

## II.     Law

A prisoner may move to vacate, set aside or correct his sentence if he claims "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).

Section 2255 is an extraordinary remedy because it asks the district court "to reopen the criminal process to a person who has already had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, relief under Section 2255 is "reserved for extraordinary situations," *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993)), as a collateral attack pursuant to Section 2255 is not a substitute for a direct appeal. *Varela v. United States,* 481 F.3d 932, 935 (7th Cir. 2007).

Thus, unless a movant demonstrates changed circumstances in fact or law, he may not raise issues already decided on direct appeal. *Olmstead v. United States,* 55 F.3d 316, 319 (7th Cir. 1995).  Further, a petitioner cannot raise constitutional issues that he could have but did not directly appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal, or unless failure to consider the claim would result in a fundamental

miscarriage of justice. *Bousley v. United States,* 523 U.S. 614, 622 (1998); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977); *Fountain v. United States,* 211 F.3d 429, 433 (7th Cir. 2000). Likewise, a Section 2255 motion cannot pursue nonconstitutional issues that were not raised on direct appeal regardless of cause and prejudice. *Lanier v. United States,* 220 F.3d 833, 842 (7th Cir. 2000). The only way such issues could be heard in the Section 2255 context is if the alleged error of law represents "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

Johnson raises various claims of ineffective assistance of counsel. Importantly, the Supreme Court has held that the usual procedural default rule does not generally apply to such claims as, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States,* 538 U.S. 500, 504 (2003).

To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). To satisfy the first prong, "the Court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. To satisfy the

second prong, a petitioner must demonstrate to a "reasonable probability" that without the unprofessional errors, "the result of the proceeding would have been different." *Id.* at 696.

A district court's analysis begins with a "strong presumption that the defendant's attorney rendered adequate representation of his client." *United States v. Meyer*, 234 F.3d 319, 325 (7th Cir. 2000). Thus, a petitioner must overcome a heavy burden to prove that his attorney was constitutionally deficient. *Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006).

### III.     Application

#### 1. Ineffective Assistance of Counsel

Johnson has clearly not met his burden under either prong of *Strickland.* Johnson believes that his specific arguments and strategies would have had more success than those his counsel pursued. However, counsel is not ineffective for failing to raise every non-frivolous argument or available to him. In this Court's opinion, effective assistance generally requires focus on the strongest arguments available. Nevertheless, Johnson's specific arguments would have not changed the outcome at his revocation hearing. Additionally, to reiterate the laws of this Circuit, the court begins it's analysis of an ineffective assistance of counsel claim with a "strong presumption that the defendant's attorney rendered adequate representation of his client." *Meyer*, 234 F.3d at 325.

### a. Failure to Suppress Evidence: Claims 1-3

Petitioner's first grounds for relief are based on Johnson's assertions of ineffective performance of his attorney surrounding Johnson's revocation proceeding. Petitioner's claims specifically allege that defense counsel failed to advise him on the legality of the search of his person, failed to file a pre-trial suppression motion for evidence seized during an allegedly unlawful search, and failed to object to the admission of the unlawfully seized evidence at the revocation hearing.

However, as the government points out in its response to petitioner's claims, Seventh Circuit precedent finds the exclusionary rule to be inapplicable to revocation proceedings. *See United States v. Hill*, 447 F.2d 817, 819 (7th Cir. 1971). The Seventh Circuit reaffirmed *Hill* in *United States v. Steinmetz*, 974 F.2d 1340 (7th Cir. 1992), when it considered a possible exception for those defendants targeted by an arresting officer based on their supervised release status. However, the Seventh Circuit noted that the possible exception "would not apply in this case since [defendant] presented no evidence that the arresting officer "targeted" [defendant] because of his status as a supervised release." *United States v. Steinmetz*, 974 F.2d 1340 (7th Cir. 1992). The same holds true for Johnson in the case at issue, as he neither alleged nor presented evidence of being targeted by Officer Bonds based on his supervised release status. Bonds "was dispatched to the Hustler Club…in reference to a male subject passing counterfeit bills." Nothing in the evidence suggests that defendant was targeted for

any reason other than his illegal activity. Accordingly, the exclusionary rule remains inapplicable to the revocation proceeding and defense counsel's actions qualify as objectively reasonable under the first prong of *Strickland*. Any effort to exclude the evidence, whether via objection or motion, would thus have proven futile. Moreover, petitioner failed to present any evidence to overcome the *Meyer* presumption of adequate representation by Mr. Gabel. 234 F.3d at 325.

Johnson also challenges the adequacy of his trial counsel's representation for failing to contest the illegality of the "search" of Johnson's person at the time of his arrest resulting in the discovery of a considerable amount of cash. Johnson claims that the alleged search was unlawful, the bills discovered during said search were "unlawfully seized evidence" and "the consent to search and the so-called confession were obtained only after police made a threat to kill him." (Doc. 1, p. 3).

Ultimately, Johnson argues that his consent was forced. However, given the affidavit of Assistant Public Defender Thomas C. Gabel attached to the government's response, Johnson never disclosed that Officer Bond threatened to kill him if he refused to consent to a search at any time during the revocation process or the appeal (Doc. 7-1). Additionally, Johnson never brought up this alleged threat at his revocation proceeding, even when provided an opportunity to speak to Judge Herndon directly on the record at the revocation proceedings (Doc. 783, p. 52, lines 6-10). Johnson also failed to put forth any evidence of this alleged threat. Instead of discussing the threat with his attorney, probation officer,

or the sentencing judge, it came to light only at the rather convenient time of filing his § 2255 petition. Accordingly, petitioner's claims are patently frivolous given the affidavit and no other evidence to support the alleged threat.

Furthermore, nothing in the evidence supports petitioner's allegation that the search was illegal. In fact, even if exclusionary rule were applicable to this revocation proceeding, which it was not, the evidence obtained on June 8, 2012, was still properly obtained by law enforcement, as defendant willingly provided the counterfeit bills when asked. He consented immediately by removing the bills from his pockets when first asked. At the revocation hearing, Officer Bonds even stated, "I advised him of the situation, what was going on, and the reason why I was there, and I asked him did he have any more [counterfeit bills]. He stated, yeah, he did, and I said, Well, let's step over to the security guard's car, which was positioned like right outside the front door to the right of the building. We got there and he emptied his left pocket and placed a large sum of bills onto the trunk of the vehicle." (Doc. 783, p. 5-6). When a person consents to a search, an exception arises allowing evidence obtained during said search to be admissible. *United States v. Strache*, 202 F.3d 980, 984 (7th Cir.2000). Therefore, defense counsel's decision to refrain from filing a pre-trial suppression motion for the evidence seized, in addition to his decision to refrain from objecting to the admission of the evidence were reasonable under *Strickland*.

Petitioner's sought-after motion and objections would have had no bearing on the evidence's presentment at petitioner's revocation hearing, as the

exclusionary rule not applying to revocation procedures. *See Pennsylvania Board of Probation & Parole v. Scott,* 524 U.S. 357, 365(1998) (rule inapplicable to a probation revocation); *Hill*, 447 F.2d at 819. Therefore, defendant failed to establish good cause for or actual prejudice from defense counsel's failure to make the motion or raise the objection regarding the admission of the evidence seized under the second prong of *Strickland*, as any attempt to suppress the evidence would have been unsuccessful. Moreover, the Seventh Circuit has stated that "[f]ailure to raise a losing argument… does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996)(citing *Strickland*, 466 U.S. at 687). Ultimately, Johnson cannot establish that counsel's decisions worked to his prejudice. Thus, Johnson's first three grounds for relief are without merit.

### b. Failure to Request a Franks Hearing: Claim 4

Johnson's fourth claim argues that Mr. Gabel was ineffective for failing to "request a Franks hearing on Officer Bonds' testimony" (Doc. 1). Johnson claims that Officer Bonds lacked the requisite training to testify about the counterfeit money, and the "Officer lie[d] under oath about the money being fake" (Doc 1, p. 4). However, as the government correctly highlighted, a *Franks* hearing is used to challenge the veracity of a search warrant affidavit, not the testimony of an officer on the stand. *Franks v. Delaware*, 438 U.S. 154, 156 (1978).

In this case, Johnson's attorney was given the opportunity to challenge the legitimacy of Officer Bonds' testimony during cross-examination, which he took

full advantage of. Mr. Gabel questioned Bonds' professional history relating to his lack of formal training in the detection of counterfeit money. He also highlighted past indiscretions as a way to challenge the officer's credibility, which Gabel investigated entirely prior to the hearing (Doc. 7-1, ¶ 8).

As defense counsel is not obligated to request a *Franks* hearing, nor was one appropriate to challenge Officer Bond's testimony, petitioner's claim fails the first prong of *Strickland*. It is not professionally unreasonable for an attorney vested with discretion to decide how to challenge a witness's credibility. Thus, in this instance, the approach chosen by Mr. Gabel was objectively reasonable under the first prong of *Strickland*. Petitioner also failed to show any prejudice under *Strickland*'s second prong because a *Franks* hearing is used to challenge the veracity of a search warrant affidavit, and would have been inappropriate in this instance. Accordingly, Johnson's fourth ground for relief is meritless.

## IV. Certificate of Appealability

Under Rule 11(a) of THE RULES GOVERNING SECTION 2255 PROCEEDINGS, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A *habeas* petitioner does not have an absolute right to appeal a district court's denial of his *habeas* petition; he may appeal only those issues for which a certificate of appealability has been granted. *See Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). For a court to issue a certificate of appealability, a petitioner must make a "substantial showing of the denial of a constitutional right," meaning, "reasonable jurists could

debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); 28 U.S.C. § 2253(c)(2).

For the reasons stated above, Johnson's claims do not warrant a certificate of appealability, as reasonable jurists would agree that the petition should not receive encouragement to proceed further. Therefore, the Court **DENIES** Johnson a certificate of appealability.

## V. Conclusion

For the reasons as discussed herein, Johnson's motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence, is **DENIED** (Doc. 1). Johnson's claims are dismissed with prejudice. The Court shall not issue a certificate of appealability. Furthermore, the Clerk is instructed to close the file and enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 5th day of June, 2015.

Digitally signed by
David R. Herndon
Date: 2015.06.05
01:56:57 -05'00'

**United States District Judge**